**Cameron O'CONNOR, Alias, Respondent, Appellant,**

v.

**John A. O'CONNELL, District Director of Providence District, Internal Revenue Service, Petitioner, Appellee.**

**No. 5267.**

United States Court of Appeals
First Circuit.

March 20, 1958.

Christopher Del Sesto, Providence, R. I., Jacob S. Temkin, Providence, R. I., on the brief, for appellant.

Joseph Mainelli, U. S. Atty., Providence, R. I., Arnold Williamson, Jr., and Samuel S. Tanzi, Asst. U. S. Attys., Providence, R. I., on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a district court order directing compliance with a summons issued by a Special Agent of the Internal Revenue Service directing the appellant to appear at a specified time and place to testify as to his and his wife's tax liabilities for the calendar years 1943 to 1947, inclusive. A motion by the appellee to dismiss the appeal for lack of jurisdiction lays first claim upon our attention.

The assertion is that the order of the District Court is not appealable for the reason that it is neither a "final decision" within the meaning of § 1291 of Title 28 U.S.C., nor any one of the interlocutory orders, decrees or judgments made appealable by § 1292 of the same Title. We do not agree for we consider the District Court's order to

be a "final decision" and hence appealable under § 1291. In Ellis v. Interstate Commerce Commission, 1915, 237 U.S. 434, 442, 35 S.Ct. 645, 59 L.Ed. 1036, the Court, relying upon Interstate Commerce Commission v. Baird, 1904, 194 U.S. 25, 24 S.Ct. 563, 48 L.Ed. 860, and distinguishing Alexander v. United States, 1906, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686, said that there was "no doubt" that an appeal lay from a district court order entered on a petition of the Interstate Commerce Commission under § 12 of the act, 49 U.S.C.A. § 12, to regulate commerce for enforcement of a summons issued by it directing the appellant to answer certain questions propounded and to produce certain papers called for by the Commission. In explanation of its holding the Court said [237 U.S. 434, 35 S.Ct. 646]: "The order is not like one made to a witness before an examiner or on the stand in the course of a proceeding *inter alios* in court." Instead, the Court pointed out: "It is the end of a proceeding begun against the witness."

In the later case of Cobbledick v. United States, 1940, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783, upon which the appellee relies, the Court was not confronted with the problem in the Ellis case or with the problem which confronts us here. The question in Cobbledick was whether a district court order denying a motion to quash a subpoena *duces tecum* requiring the person named therein to appear with papers and testify before a grand jury was a "final decision" and hence appealable to a court of appeals. The Circuit Court of Appeals for the Ninth Circuit, Palmuth v. U. S., 107 F.2d 975, had held that the order was not a final decision and the Supreme Court affirmed. But in doing so the Court was careful to distinguish, not to overrule, the Ellis case and to perpetuate, indeed to elaborate upon, the distinction between it and the Alexander case. After discussing the Ellis case and the distinction therein drawn with Alexander, the Court in Cobbledick, 309 U.S. at page 330, 60 S.Ct. at page 543 said that it found "a sufficient justification for treating these controversies [i. e. those with respect to subpoenas issued in aid of administrative proceedings] differently from those arising out of court proceedings unrelated to any administrative agency." It said:

"The doctrine of finality is a phase of the distribution of authority within the judicial hierarchy. But a proceeding like that under § 12 of the Interstate Commerce Act may be deemed self-contained, so far as the judiciary is concerned—as much so as an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience. After the court has ordered a recusant witness to testify before the Commission, there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal. The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself."

Observing this distinction, we follow the Ellis case and hold that the order of the District Court from which this appeal is taken is a "final decision" and hence appealable to this court under Title 28 U.S.C. § 1291.[1] In accord see particularly Capital Co. v. Fox, 2 Cir., 1936, 85 F.2d 97, 99, 106 A.L.R. 376, certiorari denied 1936, 298 U.S. 672, 56 S.Ct. 937, 80 L.Ed. 1394; Falsone v. United States, 5 Cir., 1953, 205 F.2d 734, 737, certiorari denied 1953, 346 U.S. 864, 74 S.Ct. 103,

---

1. This holding cuts the ground out from under, and makes it unnecessary for us to consider, the appellee's further contention that since the order appealed from is not final, it is not subject to stay of execution upon the filing of a supersedeas bond.

98 L.Ed. 375. And, *sub silentio,* First National Bank of Mobile, Ala. v. United States, 1925, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796, and, in this circuit, Mc-Donough v. Lambert, 1 Cir., 1938, 94 F. 2d 838; and Pacific Mills v. Kenefick, 1 Cir., 1938, 99 F.2d 188.

We have discussed the question of our jurisdiction at some length only because of the appellee's heavy reliance upon Jarecki v. Whetstone, 7 Cir., 1951, 192 F.2d 121, which holds that an order of the kind under consideration is not final and hence not appealable.[2] The Jarecki case undoubtedly supports the appellee's contention. But we reject it as authority, for in it the court relied upon the Alexander and Cobbledick cases without any notice of the Ellis case and the distinction drawn therein and emphasized in Cobbledick between an order enforcing a subpoena issued in the course of a judicial proceeding and an order enforcing a subpoena issued in aid of an administrative proceeding.

Having determined that the order appealed from is within our jurisdiction, we turn to the merits.

A Special Agent of the Internal Revenue Service, as the delegate of the Secretary of the Treasury, on February 7, 1957, issued a summons pursuant to § 7602 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7602, directing the appellant to present himself at the office of the Intelligence Division of the Internal Revenue Service in Providence, Rhode Island, at 9:30 a. m. on February 18, 1957, to testify with respect to his and his wife's tax liabilities for the calendar years 1943 to 1954, inclusive. By agreement the date of appearance was advanced to February 15, and on that day the appellant accompanied by counsel appeared in response to the summons. He was not put under oath but he was asked about and freely discussed matters pertaining to his and his wife's taxes for the years 1951 to 1954. As a result a basis for the settlement of claimed deficiencies for those years was agreed upon. He was informed that no deficiencies were claimed for the years 1948 to 1950, and then the years 1943 to 1947 came up for discussion. At this juncture appellant's counsel pointed out that there was no claim that the appellant had failed to file returns for any of those years and that no waivers for any of the years, except 1944, had ever been requested, and that the last of five waivers granted by the appellant for that year had long since expired. He therefore asserted that in the absence of fraud[3] the statute of limitations prevented the assessment or collection of tax deficiencies for the years 1943 to 1947 and that he would advise his client not to discuss those years until some reasonable ground for the possible belief that the appellant had fraudulently understated his taxable income for those years had been shown. Counsel said: "We want to make it perfectly clear, however, that if and when there is any evidence submitted that would show, or tend to show, fraud for those years, Mr. O'Connor is willing to testify as to those years."

The Revenue Agents in attendance at the hearing admitted that the appellant had filed returns for the years in question and that the years were "closed" except for fraud. But, although they conceded that the appellant's return for 1943 had been destroyed in accordance with established administrative practice, they asserted that calculations based on

2. Chapman v. Goodman, 9 Cir., 1955, 219 F.2d 802, upon which the appellee also relies, is not in point for in that case an order like the present was held not to be final and, therefore not appealable, for the reason that the district court in issuing the order had reserved jurisdiction to pass upon any questions of the attorney-client privilege which might arise at the administrative hearing.

3. Section 276(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 276(a), provides: "In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

the tax paid by the appellant for 1943, and his returns for later years, indicated a substantial untaxed increase in his net worth during the years in question. Appellant's counsel replied that proof of a deficiency alone was not proof of fraud and further that calculations based only on the amount of tax paid could not possibly show the amount of gross income reported or the nature and amount of the deductions claimed. And he reasserted his position that discussion with respect to the years 1943 to 1947 "will depend [upon] whether or not you can show us any evidence of fraud. The minute you show us any evidence of fraud, Mr. O'Connor would discuss those years freely and without reservation." The Agents maintained that they did not need to make any such showing as a prerequisite to discussion of those years and the interview came to an amicable end.

Soon thereafter the appellee filed a petition in the court below for an order directing the appellant to comply with the subpoena insofar as the so-called "closed" years of 1943 through 1947, closed that is except for fraud, were concerned. The appellant moved to dismiss the petition and to quash the subpoena and the matter came on for hearing. At the hearing appellant's counsel maintained the same position he had taken at the interview and the appellee took the position that the testimony of the agent that from his investigation he honestly suspected that the taxpayer-appellant had filed false and fraudulent returns for the years in question was all that had to be shown to support an order of the court directing the appellant to comply with the summons and testify as to those years. The District Court agreed with the Government's contention. It said:

"The respondent contends that the burden is upon the Government to establish either the returns for the years in question were fraudulent or at least probable cause for me to conclude that the returns were fraudulent. I don't think that that is the test. I am dealing here with an authorization conferred by Congress on the Secretary or his delegate to investigate tax liabilities and to compel payment of taxes where taxes are justly due and owing. It is not for the courts to unnecessarily hamper or restrict the activities of the Commissioner of Internal Revenue in this regard. I think it is safe to say the overwhelming weight of authority where the question of the power of the Secretary or his delegate to issue a subpoena under this particular section has been brought into issue is to the effect that it is sufficient to entitle the delegate to an order from the Court compelling obedience of his subpoena, that the Court be satisfied that the agent from his investigation of the matters available to him had grounds to conclude that there was reasonable suspicion that the taxpayer had made a false or fraudulent return."

\* \* \* \* \* \*

"In this case there is testimony by Mr. Katz that the substantial increases in the net worth of the respondent here during the years in question led him to strongly suspect that the respondent taxpayer had grossly understated his income during those years, and that his return may have been false and fraudulent.

"It seems to me, gentlemen, that that sworn testimony of Mr. Katz is, in the light of the decided cases, sufficient authority for the exercise of the power to subpoena granted to the Secretary or his delegate under Section 7602 of the Internal Revenue Code of 1954."

Wherefore the District Court issued the order requiring the applicant to comply with the summons issued by the Internal Revenue agent from which this appeal has been taken.

■ We are not here concerned with an inquiry into a "closed" year for the purpose of determining a deficiency in an "open" one, or with inquiries directed to a taxpayer's agent or employee, as in Falsone v. United States, 5 Cir., 1953,

205 F.2d 734, certiorari denied 1953, 346 U.S. 864, 74 S.Ct. 103. Our concern is with what the tax authorities must show to warrant enforcement of a summons directing a taxpayer himself to testify with respect to possible deficiencies in his taxes for years "closed" by the statute of limitations except for fraud. The question is: Do the tax authorities only need to show the enforcing court that they entertain a *bona fide* suspicion of fraud on the part of the taxpayer for those years, or must they establish to the satisfaction of the court that there is probable cause or a reasonable basis for it to believe that in those years the taxpayer perpetrated a fraud upon the revenue?

Although the Court of Appeals for the Second Circuit in Application of United States (In re Carroll), 2 Cir., 1957, 246 F.2d 762 certiorari denied 1957, 355 U.S. 857, 78 S.Ct. 85, 2 L.Ed.2d 64, found no need to answer this precise question it nevertheless gave rather detailed consideration to the conflicting authorities bearing upon it. No useful purpose would be served by repeating Judge Medina's discussion and exhaustive citations here, for many of the cases he cites are somewhat vague and in only a few of them is the question given more than cursory consideration. It will suffice to say that although perhaps the numerical weight of authority supports the position taken by the Government and by the court below, we think the taxpayer's position is supported by the better reason.

Chapter 78 of the Internal Revenue Code of 1954, after authorizing the issuance of summons by the Secretary or his delegate in § 7602, and providing for enforcement of such summons by the local district court in § 7604, 26 U.S.C.A. § 7604, provides in § 7605(b), 26 U.S. C.A. § 7605(b), under the subtitle "Restrictions on examination of taxpayer":

"No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

We entertain no doubt that the Secretary or his delegate is entitled as a matter of right to an order enforcing compliance with any reasonable summons issued by him directing a taxpayer to testify and to produce his records with respect to any year not barred by the statute of limitations, provided, of course, the specific statutory restrictions on his investigatory powers imposed in § 7605(a) are observed. These examinations may well be burdensome to the taxpayer but by no other means can the tax laws be enforced. As the years pass, however, the burden of such examinations on the taxpayer increases, for memories fade, records may be lost or mislaid, indeed to conserve space honest taxpayers may well destroy their records relating to years as to which the statute of limitations has run, and persons who have assisted taxpayers in preparing their returns may die, move away, or for one reason or another be no longer available. For instance, the taxpayer here asserts that the legal counsel who prepared his returns for the "closed" years has died and the accountant who assisted in their preparation is now over 80 years of age and is suffering from a defective memory.

We may well assume that considerations such as these had weight with Congress when it legislated in § 7605(b) to curb excessive administration zeal by protecting taxpayers from unnecessary examination and investigation. But if these considerations are to be adequately served we cannot adopt the Government's contention that to obtain an order for enforcement as to a "closed" year all that the Secretary or his delegate needs to show is the honesty of his subjective belief that fraud existed in such a year. The reason for this is that in the Government's view the necessity for an examination into a closed year would for all practical purposes be left to admin-

istrative determination and § 7605(b) would be relegated to hardly more than a pious exhortation directed to the tax authorities. As a practical matter, according to the Government's contention, the court's function under § 7604 would be reduced to little more than that of summarily affixing its stamp of approval to administrative action, for we can hardly assume that agents of the Internal Revenue Service would undertake to examine a taxpayer as to a closed year when they did not honestly believe that the taxpayer had been guilty of fraud in such a year. We cannot assume that the agents of the Internal Revenue Service would undertake an examination into a closed year only to harass and annoy a taxpayer.

To make the Congressional purpose expressed in § 7605(b) to protect taxpayers from unnecessary examinations truly effective we think the Secretary or his delegate, when a court order is needed to enforce compliance with a summons to testify as to a "closed" year, should be required to establish to the court's satisfaction that there is probable cause for an investigation into such a year. We think Congress intended to give taxpayers this much protection when the investigation of their returns may reach far back into the past, in this case fourteen years, and in some cases perhaps even further, and that to require such a showing does not impose too heavy a burden upon the tax authorities or unduly restrict or hamper them in tax enforcement.

Furthermore, this interpretation of § 7605(b) is in accord with the limitations upon the inquisitorial powers of government which have become traditional in this country. We agree with Judge Moscowitz' statement in In re Brooklyn Pawnbrokers, Inc., D.C.E.D.N.Y.1941, 39 F.Supp. 304, 305, that "to permit the government to examine as to statute barred years upon a mere conclusory allegation of fraud is to deprive the taxpayer of that freedom from unreasonable harassment which he has a right to expect under a democratic form of government."

This does not mean that proof of fraud is required. It means only that before the tax authorities are entitled to a district court order enforcing a summons directing a taxpayer to testify as to a closed year they must establish to the district court's satisfaction that a reasonable basis exists for a suspicion of fraud, or put another way, that there is probable cause to believe that the taxpayer was guilty of fraud in a statute barred year. We, therefore, disagree in principle with United States v. United Distillers Products Corp., 2 Cir., 1946, 156 F.2d 872, 874, and Globe Construction Co. v. Humphrey, 5 Cir., 1956, 229 F.2d 148, and agree with the rule as it was assumed to be in Martin v. Chandis Securities Co., 9 Cir., 1942, 128 F.2d 731, 735, wherein it is said:

"It is the appellant's contention that the only showing required (and we assume also the only allegation required) is a 'showing of probable cause, sometimes called reasonable ground for suspicion of fraud.' Appellees do not controvert that contention, and we accept it as the test in this case without expressing any opinion as to the soundness thereof."

The taxpayer's return for 1943 having been destroyed, the Government may have some serious difficulty in establishing probable cause for the belief that the taxpayer was guilty of fraud in that year. But we do not think that destruction of the return for that year makes it impossible as a matter of law for the Government to show the possibility of fraud.

It follows that the case must go back to the court below for application of the test set out herein to the evidence already submitted, or to that evidence as supplemented by such additional evidence as the court may see fit to receive if any is offered.

Judgment will be entered vacating and setting aside the order of the District Court and remanding the case to that Court for further proceedings not inconsistent with this opinion.