Laurence A. NIGHOSIAN, Revenue
Agent, Internal Revenue Service

v.

David LASH, Treasurer, David's, Inc.

No. EBD 58–57.

United States District Court
D. Massachusetts.

March 9, 1959.

Anthony Julian, U. S. Atty., Chas. F. Barrett, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Jacob J. Spiegel, Boston, Mass., for defendant.

ALDRICH, District Judge.

In this proceeding, the Internal Revenue Service seeks an order under section 7604 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 7604, compelling respondent to comply with a summons issued under section 7602. The summons requires respondent, as treasurer of David's, Inc., a Massachusetts corporation hereinafter called David's, to produce the corporation's books and records, and testify as to its income tax liability, for the years 1952–1955. Respondent raises a number of defenses. The facts will be stated as they become relevant.

■ The first defense is that the summons is not sought for a proper purpose, but is in aid of an investigation of Revenue Service personnel by the office of the Regional Inspector.[1] It is true, as respondent asserts, that the Regional Commissioner's reopening letter followed an investigation commenced by the Inspection Service into alleged irregularities of a number of revenue agents, including two who had conducted the original examinations of David's returns for 1952–1955. Indeed, the Regional Inspector could be said to have instigated the reopening letter, and I find that the Inspection Service hopes that its investigation may benefit from the present proceeding. Respondent contends that this brings the case within the principles set forth in United States v. O'Connor, D.C.

D.Mass., 118 F.Supp. 248. If the sole purpose of the proposed examination were to aid that investigation, it probably would. I am not prepared to accept petitioner's suggestion that the authority conferred by section 7602 to subpoena persons and examine. books "for the purpose of ascertaining the correctness of any return," applies to every situation where the Internal Revenue Service may be interested in that subject, including one where no discoverable incorrectness could lead to the determination of a tax liability. On the contrary, the burden is on the petitioner to show (a), that it could lead to such result, and (b), that this was at least one purpose of the examination.

■ With regard to the latter, I find that petitioner did have such a purpose. The very circumstances which excited the interest of the Regional Inspector here were of equal concern to the Regional Commissioner. If examination of the corporate books and records were to disclose malfeasance on the part of the agents who examined the returns, by the same token it might well disclose irregularities by the taxpayer. While the interest of the Inspection Service was primary in point of time, and continued, I find the summons was issued in the name of a revenue agent attached to the Audit Division as a result of a reopening letter signed by a Regional Commissioner whose purposes included a bona fide desire to ascertain the correctness of David's returns in connection with David's tax liability. I rule that neither the additional, concurrent interest of the Regional Inspector for other purposes, nor the fact that he was the first actor in the matter, is a legal deterrent to these proceedings.

---

1. The Regional Inspector operates independently of the Regional Commissioner and reports directly to Washington. His concerns are the operating practices and the integrity and security of the Internal Revenue Service itself. The Regional Commissioner, on the other hand, is concerned primarily with the determination and collection of taxes. His investigations are conducted by special agents from the Intelligence Division and revenue agents from the Audit Division. See generally 21 Fed.Reg. 10418 (1956). It might be noted that in this case some of the activities of the Regional Inspector and the Regional Commissioner were conducted jointly or coordinated by means of a special-project group, but in view of my rulings, infra, I need not, and do not, attach any significance to this fact.

The other issue, whether the examination was shown to be conducive to the determination of a deficiency, is more difficult. Three of the four tax years involved are "closed" from the standpoint of the three-year statute of limitations. 26 U.S.C.A. § 6501(a). Collection of any deficiency will, accordingly, require proof of fraud. 26 U.S.C.A. § 6501(c) (1). Under such circumstances an examination is in the nature of an unreasonable search and is "unnecessary" within the meaning of section 7605(b) unless "a reasonable basis exists for a suspicion of fraud," that is, unless there is "probable cause." O'Connor v. O'Connell, 1 Cir., 253 F.2d 365, 370. The parties disagree as to whether in fact probable cause has been shown, but even more fundamentally they disagree as to the extent of the burden upon petitioner and the method to be adopted by the court in making such determination. I will consider this latter question first.

Essentially it is respondent's contention that any evidence either party chooses to produce will be weighed by the court, which will make its own determination of the existence of probable cause in the light of such evidence as it chooses to believe. It is true that in O'Connor v. O'Connell, supra, the court said that the petitioner "must establish to the district court's satisfaction that a reasonable basis exists for a suspicion of fraud, or put another way, that there is probable cause to believe that the taxpayer was guilty of fraud * * *." Ibid. It did not say, however, to what extent the district court must be satisfied. Is the district court to be satisfied that a reasonable basis exists for petitioner's determination, as to both the underlying facts and the existence of probable cause, or is it to make its own?

During the hearing, for the purpose of establishing the frame of reference in which testimony would be considered, I stated that if a basis for probable cause was shown through certain witnesses, whose testimony was contradicted, but not rendered "so incredible that no reasonable person could believe them * *

[so that] a clear issue of fact exists which would warrant a finder of fact to resolve conflicting testimony one way or another and conclude that probable cause existed * * * the court is not to substitute itself for the Regional Commissioner in resolving that issue of fact." I remain of that opinion. It should not be open to every person on whom a summons is served to have a full trial on the merits and have a court consider de novo whether it believes some testimony, or some other, or whether, of two permissible inferences, it draws one rather than another.

While the statute does not answer these questions directly, it seems to me that considerations of procedure and policy lean strongly in petitioner's favor. It is true the statute has provided the method whereby the district court is the one to enforce compliance. Obviously Congress did not want to entrust to administrative officials the important function of an order of contempt. However, it was content to give to these officials the power to issue such a summons, and to do so without application to the court. This necessarily entails an initial finding of facts by the official, and a conclusion that such facts warrant a reopening. Respondent's contention would not only place a heavy burden upon the court, but would down-grade what is essentially a day-to-day administrative action, and encourage a general disregard of summonses. I believe that sufficient protection of taxpayers is afforded by a review similar to that which a judge gives to a jury verdict.

Before leaving this question, an interesting issue, perhaps only theoretical, remains. If the Regional Commissioner acts upon reports from a subordinate, what if the subordinate possesses additional information supporting probable cause which was not presented to the Commissioner, and which therefore did not enter into his determination? That situation may have existed in this case. Since I find the Commissioner's determination supportable on the basis of facts and circumstances which were spe-

cifically brought to his attention, I need not answer the question, but in case of possible appeal I include this additional matter in a footnote.

The reopening letter was delivered to the respondent on May 21, 1958. Prior to that time the Regional Inspector had conducted an investigation and obtained certain information which was transmitted to the Commissioner and which served as the basis for his determination that an additional inspection of David's books was necessary. David's is in the loan business. With respect to the agent who had conducted the audits of David's returns for 1952 and 1953, the Commissioner was informed that a number of substantial loans had been made to the agent and to his wife and brother at allegedly low rates of interest, and that some of the loan cards were marked "DND" (do not dun). (The written memorandum to the Commissioner actually states that all the loan cards were so marked. An examination of the cards which were introduced in evidence indicates that only two were.) Only one of the loans was made prior to the date of the audit. With respect to the agent who had conducted the audits of David's returns for the years 1954 and 1955, the Commissioner was informed of a longstanding personal relationship between respondent and the agent and his family. Prior to the time of the audits David's had negotiated an exchange of checks for the agent's minor son, and respondent had served as an accommodation party in a number of transactions on behalf of members of the agent's family, as well as an officer of a family corporation. Information was also passed on to the Commissioner as a result of an interview with respondent to the effect that respondent had stated that he had made loans to revenue agents at favorable rates, that he encouraged good relations between himself and revenue agents, and that he had frequent social meetings with revenue agents, such as meetings with them for drinks at cafes several times a week.[2]

Petitioner has also shown that under the applicable regulations the agents who examined David's returns should have recused themselves because of the extent of their relationship with the taxpayer. United States Treasury Department, Internal Revenue Service Manual, Audit and Investigation Section, Part IV, § 4031(3) (indebtedness to taxpayer, or business or social relationships); United States Treasury Department, Rules of Conduct for Employees of the Internal Revenue Service, §§ 29, 35 (business and financial transactions, and receipt of favors forbidden). I do not find that respondent knew of these regulations. If this were a trial of respondent for fraud it is possible that this conduct of the agents might be inadmissible as in the nature of hearsay so far as he is concerned. I do not reach this question, as hearsay is not an objection in this proceeding. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327. Barring that objection, it seems to me of some relevancy that the agents were sufficiently willing to work on David's returns that they risked disciplinary action or dismissal from the service in order to do so. Respondent argues that he could not know what particular agents would work on his returns. I so find, I would also find reasonable ground to believe that he continually endeavored to be "friendly" with as many agents as possible for just that reason. A situation where a taxpayer unduly cultivates agents, and agents find the

2. I would place the following additional matters in the category of information which was known to the inspectors but which was not shown to have been brought to the attention of the Regional Commissioner: That the first agent was a close and personal friend of respondent's; that respondent allegedly referred to the loans as "preferential"; and that respondent allegedly stated that the reason he cultivated the friendship of revenue agents was because they could do him "honest favors," and cited as an example of the wisdom of this course an experience where David's return was examined by a "non-friend" agent who made a "technical adjustment" increasing the tax by $5,000.

advantages such to warrant deliberate infractions of instructions, reasonably suggests more serious improprieties.

It is true, as respondent stresses, that the Commissioner is unaware of any specific omission or error in David's returns. "In dealing with probable cause, * * * as the very name implies, we deal with probabilities." Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L.Ed. 1879, quoted in Draper v. United States, supra. It seems to me it is also proper, in appropriate cases, to deal in generalities. While this case may be characterized as close, I rule that the Commissioner's suspicions are reasonable, and that he has shown probable cause to require the respondent to obey the summons with respect to the closed years. This ruling, obviously, takes equal care of the still open year.

I will hear the parties further as to the form of order.