David **LASH**, Treasurer, David's, Inc., Respondent, Appellant,

v.

Laurence A. **NIGHOSIAN**, Revenue Agent, Internal Revenue Service, Petitioner, Appellee.

No. 5537.

Certiorari Denied Feb. 29, 1960.

See 80 S.Ct. 610.

United States Court of Appeals First Circuit.

Dec. 4, 1959.

Jacob Spiegel, Boston, Mass., with whom Zipporah B. Wiseman, Boston, Mass., was on brief, for appellant.

Rita E. Hauser, Attorney, Department of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., Anthony Julian, U. S. Atty., and Charles F. Barrett, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, HARTIGAN, Circuit Judge and SWEENEY, District Judge.

WOODBURY, Chief Judge.

█ This is an appeal from an order of the United States District Court for the District of Massachusetts directing the respondent, as the treasurer of David's Inc., to appear with specified corporate records before a revenue agent of the Internal Revenue Service at a given time and place to testify as to the tax liability of David's, Inc., for the years 1952 to 1955, inclusive.[1]

David's, Inc., to be referred to as the taxpayer hereinafter, is engaged in the loan business in Fall River, Massachusetts. Its returns for the fiscal years 1952 and 1953 were examined by one revenue agent and its returns for the fiscal years 1954 and 1955 were examined by another. These agents duly submitted their audit reports in September, 1954, and July, 1956, respectively.

Subsequent to these examinations the Regional Inspector, who operates independently of the Regional Commissioner and reports directly to headquarters in Washington, and who is concerned with the operating practices and the security and integrity of the Internal Revenue Service in his Region, and the Regional Commissioner, who is concerned primarily with the determination and collection of taxes in his Region, set up a joint project to investigate allegations of collusion between taxpayers and revenue agents in the Fall River area. Field agents working on this joint project reported to the project coordinator that their investigations disclosed close personal and business relationships between the respondent and the agents who had examined the taxpayer's returns for the years involved. They reported that prior, during and subsequent to his audit the agent who had examined the taxpayer's returns for 1952 and 1953 had negotiated for himself and members of his immediate family several loans from the taxpayer amounting in gross to $11,000 and that these loans were unsecured, bore

---

1. In O'Connor v. O'Connell, 1 Cir., 1958, 253 F.2d 365, this court held that orders such as this were "final decisions" and hence appealable under Title 28 U.S.C. § 1291.

either no interest or interest at one half of one per cent per month, and that the taxpayer's cards recording the loans were marked DND for "do not dun."[2] And they reported that the respondent had a longstanding personal relationship with the agent who had examined the taxpayer's returns for 1954 and 1955, that the respondent had negotiated an exchange of checks in the amount of $6,500 for the agent's minor son, that the respondent had served as an accommodation party in a real estate transaction entered into on behalf of members of the agent's family pending the outcome of a law suit and that he had also served as an officer of the agent's family corporation. They also reported that in an interview the respondent had said that he made loans to revenue agents at favorable rates, that he encouraged good relations with revenue agents, and that he had frequent social meetings with revenue agents, such as meeting with them for drinks at cafes two or three times a week.

The coordinator of the joint project passed this information on to the Regional Commissioner with the request for a reopening letter addressed to the taxpayer and the Commissioner complied on May 20, 1958. The respondent declined to make the taxpayer's books and records for the years 1952 through 1955 available for inspection as requested in the reopening letter and on June 13 he was served with a summons issued by the Commissioner under § 7602 of the Internal Revenue Code of 1954. 26 U.S. C. § 7602. The respondent appeared at the time and place designated in the summons with some corporate records but refused to permit any inspection of them. Application under § 7604 id. for attachment against the respondent as for a contempt was thereupon made to the court below and that court after hearing entered the order enforcing the summons from which this appeal has been taken.

The first three of the four tax years here involved admittedly are "closed" by the three year statute of limitations (§ 6501 of the Internal Revenue Code of 1954, 26 U.S.C. § 6501), to the assessment of any tax except for fraud or other matters not involved herein. The basic questions on this appeal are whether the Commissioner as the Secretary's delegate had statutory authority to issue his summons requiring disclosure as to those closed years, and, if he did, whether there was enough evidence before the District Court to warrant its conclusion that there was "probable cause" to believe that the taxpayer's returns for the "closed" years were fraudulent. See O'Connor v. O'Connell, supra. We think both questions must be answered in the affirmative.

█ Counsel for the appellant asserts that all of the evidence points inescapably to the conclusion that the sole purpose of the Regional Commissioner in issuing the summons directed to the taxpayer was to further the investigation of the Inspection Service into the conduct of the revenue agents who had audited the taxpayer's returns for the closed years in question. Wherefore he contends that the Commissioner as the Secretary's delegate lacked statutory authority to issue the summons, for § 7602, supra, gives the Secretary or his delegates power to summon a person liable for tax only "For the purpose of ascertaining the correctness of any return."

The District Court found that "the Regional Inspector could be said to have instigated the reopening letter," and that "the Inspection Service hopes that its investigation may benefit from the present proceeding." [171 F.Supp. 122.] But it found that the investigation of the conduct of the revenue agents was not the Commissioner's sole purpose for issuing the summons. And it found that this case was not one in which no discoverable incorrectness in the taxpayer's returns for the closed years could lead to the de-

---

2. The Court below found by inspection of the cards that actually only two of them were so marked.

termination of a tax liability. On the basis of these findings it, we think entirely correctly, distinguished United States v. O'Connor, D.C.Mass.1953, 118 F.Supp. 248. See Boren v. Tucker, 9 Cir., 1957, 239 F.2d 767, 772, 773. The court then found and ruled as follows:

"The very circumstances which excited the interest of the Regional Inspector here were of equal concern to the Regional Commissioner. If examination of the corporate books and records were to disclose malfeasance on the part of the agents who examined the returns, by the same token it might well disclose irregularities by the taxpayer. While the interest of the Inspection Service was primary in point of time, and continued, I find the summons was issued in the name of a revenue agent attached to the Audit Division as a result of a reopening letter signed by a Regional Commissioner whose purposes included a bona fide desire to ascertain the correctness of David's returns in connection with David's tax liability. I rule that neither the additional, concurrent interest of the Regional inspector for other purposes, nor the fact that he was the first actor in the matter, is a legal deterrent to these proceedings."

The findings of fact above are supported by substantial evidence in the record and the reasonable and logical inferences to be drawn from that evidence. Thus under the familiar principle embodied in Rule 52(a), F.R.Civ.P., 28 U.S.C., they cannot be successfully challenged in this court. And we agree with the District Court's rulings on that evidence.

■ Under § 7602 of the Internal Revenue Code of 1954 the authority of the Secretary or his delegate to summon persons liable for tax is limited to "the purpose of ascertaining the correctness of any return." The authority is not, although of course it might have been, further limited by requiring that the "sole" or "primary" purpose of the Secretary or his delegate in issuing a summons must be to determine whether a taxpayer has filed a correct return. However, were we to read into the section greater limitations upon the power to summon than the Congress chose to provide, we believe that we would not be construing the section but legislating. As the statute reads there is authority to summon for the purpose of ascertaining the correctness of a taxpayer's return. There must be this purpose. That there may perhaps also be other purposes in particular cases seems to us inconsequential as it did to the court below. See Boren v. Tucker, supra.

We turn now to the question whether there is sufficient evidence in the record to support the District Court's order directing compliance with the summons served upon the respondent-appellant.

In O'Connor v. O'Connell, 1 Cir., 1958, 253 F.2d 365, 370, we rejected the contention that all the Secretary or his delegate needed to show to obtain an order enforcing a summons with respect to a closed year was the honesty of his subjective belief that the taxpayer had been guilty of fraud in such a year. We said that to make the provision of § 7605(b) of the Internal Revenue Code of 1954 forbidding unnecessary examinations or investigations of a taxpayer's books of account truly effective "the Secretary or his delegate, when a court order is needed to enforce compliance with a summons to testify as to a 'closed' year, should be required to establish to the court's satisfaction that there is probable cause for an investigation into such a year." We pointed out that this did not mean that proof of fraud was required but meant only "that before the tax authorities are entitled to a district court order enforcing a summons directing a taxpayer to testify as to a closed year they must establish to the district court's satisfaction that a reasonable basis exists for a suspicion of fraud, or put another way, that there is probable cause to believe that the taxpayer was guilty of fraud in a statute barred year."

The District Court encountered difficulty in applying the rule of O'Connor

v. O'Connell, its particular difficulty being with the nature and extent of the burden resting on the petitioner to show probable cause or reasonable ground for suspicion of the existence of fraud. It posed the question: "Is the district court to be satisfied that a reasonable basis exists for petitioner's determination, as to both the underlying facts and the existence of probable cause, or is it to make its own?" [171 F.Supp. 123.]

In O'Connor v. O'Connell supra we used the substantially synonymous phrases, see footnote 3 of Draper v. United States, 1959, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327, "probable cause" and "reasonable grounds" in their generally accepted meaning in other contexts. In using the familiar phrases we meant to imply that in ordering enforcement of a summons the district court should apply the same test that it would apply in deciding whether an arrest by an officer without a warrant, and perhaps his incidental search of the person of his prisoner, complied with constitutional or statutory requirements. See Draper v. United States, supra, and Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, and cases cited. See particularly Carroll v. United States, 1925, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543, in which Mr. Chief Justice Taft writing for the Court said quoting and citing earlier cases: "'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.'" The function of the district courts in these cases as we see it is comparable to the function of a grand jury. It is to prevent the Secretary or his delegate from going on a "fishing expedition" into a taxpayer's books or records for closed years, or from acting upon a mere hunch or a vague surmise, but to permit inspection as to closed years when the court is satisfied, meaning persuaded or content, that the official who issued the summons had a reasonable basis for his belief that the taxpayer had been guilty of fraud in a closed year. Thus we think the court below was quite right when it said during the trial, and repeated in its opinion, that if a basis for probable cause was shown by witnesses whose testimony, although contradicted, was not so incredible as to be beyond reasonable belief, it would not substitute itself for the Regional Commissioner in resolving the issue of fact presented.

We see no need for lengthy discussion of the question of the sufficiency of the evidence to warrant the District Court's order of enforcement. Certainly an ulterior tax motive leading to a reasonable suspicion of fraud may be inferred from the evidence of the respondent's business and personal intimacy with the agents who audited the taxpayer's returns.

Other arguments advanced by the respondent-appellant do not require discussion.

Judgment will be entered affirming the order of the District Court.