286 F.2d 864
 61-1 USTC P 9265
 John J. McDERMOTT, Special Agent, Intelligence Division,
Internal Revenue Service, Chicago, Illinois,
Petitioner-Appellant, Cross-Appellee,
v.
JOHN BAUMGARTH COMPANY, a corporation, Respondent-Appellee,
Cross-Appellant.
In the Matter of the Application for Enforcement of a
Summons Issued by the Commissioner of Internal
Revenue to John Baumgarth Company, a corporation.
 Nos. 13003, 13004.
 United States Court of Appeals Seventh Circuit.
 Feb. 21, 1961.
 
 Charles K. Rice, Asst. Atty. Gen., John J. McGarvey, Atty., Tax Division, U.S. Dept. of Justice, Washington, D.C., Robert Tieken, U.S. Atty., Chicago, Ill., Meyer Rothwacks, Richard B. Buhrman, Attys., Dept. of Justice, Washington, D.C., Harvey M. Silets, Asst. U.S. Atty., Chicago, Ill., for appellant, cross-appellee.
 A. Bradley Eben, Irving H. Goldberg, William R. Rivkin, Chicago, Ill., for appellee, cross-appellant; Goldberg, Weigle, Mallin & Rivkin, Chicago, Ill., of counsel.
 Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 John Baumgarth Company, a corporation, herein referred to as the corporation, cross-appellant, contends that the district court erred in enforcing a summons requiring it to produce is books and records for the fiscal years ending February 28, 1951 and 1952, because John J. McDermott, Special Agent, Intelligence Division, Internal Revenue Service, Chicago, Illinois, cross-appellee, herein referred to as McDermott, was required to establish to the satisfaction of the district court 'that there exists probable cause for him to believe that the Corporation was guilty of fraud in filing its returns for those years'.
 
 
 2
 The order from which McDermott's appeal and the corporation's cross-appeal were taken, directed that the books and records for those two years be returned to the corporation and then made available to the agents because 'there are reasonable grounds to suspect that false and fraudulent returns have been filed by the' corporation for those years. With respect to the fiscal years ended February 28, 1953, and Febrary 28, 1954 (which were also covered by the summons), the order directed that the books and records be returned to the corporation poration unconditionally.
 
 
 3
 The corporation asserts that McDermott, in his petition to enforce the summons and the affidavit attached thereto, alleged only that 'there are reasonable grounds for believing' the corporation 'it guilty of fraud in connection with its tax liability' and that 'the facts establishing reasonable grounds for his suspicion of fraud are that 'there are grounds to believe that' the corporation in its returns for the years 1951-1952 understated its sales and overstated its travel and postage expense'.
 
 
 4
 The district court held a hearing upon McDermott's petition and affidavit and the corporation's answer.
 
 
 5
 McDermott testified, inter alia, that he interviewed George Leavitt, whom he believed to be a former associate of John Baumgarth, president of the corporation, and a former vice-president thereof until 1952. Leavitt advised McDermott that the income tax returns filed by the corporation were false and fraudulent; that certain income was not reported; that he salaries paid to Edith and Gretchen Baumgarth-- the sisters of Baumgarth-- were 'kicked back' to him; and that he (Leavitt) 'was in possession of a document of twenty-one points which set forth the additional allegations against the corporation'. The following day, Leavitt presented McDermott with a written statement bearing Leavitt's signature. It listed twenty-one 'points', which were statements of alleged facts, in regard to operations of the corporation, which, if true, would obviously constitute fraudulent transactions and misrepresentations preventing a true disclosure of tax liability.
 
 
 6
 McDermott interviewed William J. Ireland, comptroller of the corporation from 1946 until 1952. Ireland advised McDermott that the corporation's tax returns were false and fraudulent; that some items of income had not been reported on the returns; that there had been some manipulation of inventory to reduce taxes; that there had been 'kickbacks' of salaries of Edith and Gretchen Baumgarth as well as possibly other employees; that the sales of waste paper were not recorded on the books;[1] that travel expenses were overstated; and that certain other claimed expenses were entirely fictitious.
 
 
 7
 McDermott attempted to interview employees of the corporation, and issued nine or ten summonses requesting that they come in and testify. Only one of the employees appeared.
 
 
 8
 McDermott asked Edith what work she did for the corporation. She replied that she signed checks. He asked 'What else do you do besides sign checks' and she replied only, 'I sign checks.' McDermott's interview with Edith, who was supposed to receive a salary of $15,000 to $20,000 a year, confirmed his suspicion that the tax returns were false and fraudulent.
 
 
 9
 The district court concluded that McDermott was justified in believing that 'probable cause did exist in his mind so far as a probable fraud' is concerned as to the fiscal yeas ended February 28, 1951, and February 28, 1952. The court adjudged 'that there are reasonable grounds to suspect' that the corporation had filed 'false and fraudulent returns' for the years 1951-1952.
 
 
 10
 McDermott's counsel states that his appeal is for the limited purpose of asuring the continued existence and availability of the corporation's 1953-1954 books and records at a future time when the Internal Revenue Service anticipates it will be able to satisfy the district court that there is such evidence of fraud that a new summons calling for those documents should be judicially enforced. McDermott contends (1) that there is reason to believe that the return of the records to the corporation at this time would mean their destruction, (2) which would render it impossible for the Service to ascertain the amounts, if any, of the understatements of net income and income tax liability with respect to those years, and (3) the continued impoundment of the documents in question for a reasonable time will work no hardship on the corporation and will tend to serve the public need to protect the revenue against fraud. He asks us to modify the district court's order to provide for the continued impounding by the marshal of the books and records for a reasonable time after the 1951-1952 books have been made available to the Internal Revenue Service, in order to afford the Service an opportunity to satisfy the district court that a new summons for the 1953-1954 books should be judicially enforced.
 
 
 11
 In addition to its contention that the district court erred in enforcing the summons as to the books for 1951-1952, the corporation argues that it does not follow that, because books and records may reflect income tax fraud for a given year, it is probable that they will reflect fraud for succeeding years. It also contends that, under the circumstance of this case, there is no power in this court to impound indefinitely the corporation's books and records.
 
 
 12
 1. As to the summons pertaining to the production of the corporation's books and records for 1951-1952, we have set forth the nature and scope of the investigation made by McDermott. We hold that a sufficient showing has been made by the government, to support the order of the district court, under 26 U.S.C.A. 7604(a), to enforce the summons issued by the internal Revenue Service, under the authority of 26 U.S.C.A. 7602. This is so, whether we apply the rule announced by the Second Circuit in Foster v. United States, 2 Cir., 265 F.2d 183, and United States v. United Distillers Products Corp., 2 Cir., 156 F.2d 872, that a 7602 examination is for the purpose not only of ascertaining the correctness of any return but also for determining the liability of any person for any inernal revenue tax and that the Commissioner is entitled to the examination, or the rule prevailing in the Fifth, Sixth and Ninth Circuits, that the Service must show reasonable grounds for suspicion of fraud, Falsone v. United States, 5 Cir., 205 F.2d 734, certiorari denied 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375; Globe Construction Co. v. Humphrey, 5 Cir., 229 F.2d 148; Peoples Deposit Bank & Trust Co., Paris, Ky., v. United States, 6 Cir., 212 F.2d 86, certiorari denied 348 U.S. 838, 75 S.Ct. 37, 99 L.Ed. 661; Corbin Deposit Bank of Corbin, Ky., v. United States, 6 Cir., 244 F.2d 177; Boren v. Tucker, 9 Cir., 239 F.2d 767.
 
 
 13
 It appeared from McDermott's verified petition, and his cross-examination in respect thereto on the hearing below, that from his investigation he suspected and had reasonable grounds to suspect that the corporation may have filed fraudulent income tax returns for the fiscal years 1951-1955. He further testified that it was his belief that the tax returns filed were false and fraudulent and that his belief was based on information received from Leavitt, and personal observation of Edith Baumgarth, sister of Baumgarth, president of the corporation, and the statement of Ireland.
 
 
 14
 The corporation cites Lash v. Nighosian, 1 Cir., 273 F.2d 185, 189, to the effect that, 'in ordering enforcement of a summons the district court should apply the same test that it would apply in deciding whether an arrest by an officer without a warrant, and perhaps his incidental search of the person of his prisoner, complied with constitutional or statutory requirements'.
 
 
 15
 It also contends that Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327, and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, stand for the proposition that where probable cause is asserted by reliance on the word of an informer, 'probable cause does not exist unless the informer's information in the past has been found to be accurate and reliable and his present statement is verified and corroborated by other matters within the knowledge of the person claiming the reasonable belief that a crime has been committed.'
 
 
 16
 While we do not adopt the view recognized by the First Circuit in Lash v. Nighosian, supra, it is evident that the evidence offered in support of McDermott's petition meets the test set by Jones v. United States, 362 U.S. 257, 267-272, 80 S.Ct. 725, 4 L.Ed.2d 697, relied on by the corporation. The court, 362 U.S. at page 268, 80 S.Ct. at page 735, referred to a police officer's affidavit based upon information given him by an informer, who had on previous occasions given the officer information which was found to be correct, and that information regarding Jones had also been received from other sources. On this basis, the officer based his oath that he believed that there were illicit narcotic drugs being secreted in Jones' apartment. The court, 362 U.S. at page 269, 80 S.Ct. at page 735, said:
 
 
 17
 'In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. * * *'
 
 
 18
 In the case at bar, McDermott received clear corroboration of many of the charges made by Leavitt and Ireland. The tests set up by the Jones case were met in the case at bar.
 
 
 19
 2. In the course of its investigation of possible income tax fraud committed by the corporation, on a showing by the United States attorney to the effect that the books and records of the corporation were about to be destroyed, contrary to an order signed by the court three weeks earlier, the court, on December 31, 1958, ordered the books and records seized and impounded by the United States marshal. Included in the books and records thus impounded were those for the years 1953-1954. McDermott assures us that the government does not contend that the court below erred in refusing, on the present record, to make the 1953-1954 books available to the Treasury agents, and suggests that it is unnecessary for this court to reach that question, for it appears probable that from the 1951-1952 books enough evidence of consistent fraudulent practices can be obtained to provide a strong showing of the need to examine the 1953-1954 books. He adds that this appeal is, then, essentially for protective purposes, viz., to assure the continued existence and availability of the books to the Internal Revenue Service at a future time when, it is anticipated, the Service will be able to satisfy the district court that a new summons calling for the 1953-1954 books should be judicially enforced.
 
 
 20
 McDermott urges that, if the 1953-1954 books are returned to the corporation, they will not be in existence after the agents have had an opportunity to examine the 1951-1952 books, and that, if the 1953-1954 books are destroyed, it will be impossible for the Service to determine the amounts, if any, of the understatements derstatements of net income and income tax liability with respect to those years.
 
 
 21
 McDermott's argument is essentially as follows: If the numerous allegations of fraud made by Leavitt, and corroborated in part by former comptroller Ireland (supra), are found to be true with respect to the earlier years, it would be eminently reasonable to infer that at least some of the fraudulent practices may have been continued in later years, after Leavitt and Ireland were no longer associated with the corporation. Moreover, investigation predicated on the 1951-1952 books may provide clues leading to proof of specific fraudulent transactions in 1953-1954.
 
 
 22
 On the other hand, the corporation contends that the inference sought to be drawn is based purely upon hypothetical facts, and that, even assuming, arguendo, that the books and records reflect fraud for the years 1951-1952, it does not follow as a matter of logic that therefore fraud existed in the 1953-1954 returns. It argues that inferences must be based on probabilities, not on possibilities. They must be reasonably drawn from and supported by facts on which they purport to rest and may not be the result of mere surmise and conjecture. The corporation says that the fact that one committed an offense in one year cannot mean it is probable that he therefore committed a crime in a following year. Such a conclusion would be mere surmise. Any view contrary to this would permit unreasonable arrests, searches and seizures.
 
 
 23
 It appears from the proceedings in the district court that the judge determined, as a matter of fact, that the evidence was sufficient to justify McDermott's belief that probable cause existed insofar as a probable fraud in connection with the corporation's tax returns for the years 1951-1952 was concerned. However, the court restricted his determination specifically to those years and thereby made it plain that the court declined to draw such an inference as to such probable cause in connection with the years 1953-1954.
 
 
 24
 It is a function of a trial judge to draw reasonable inferences from the facts appearing before him. While the correctness of his drawing, or refusing to draw, an inference may be questioned upon appeal to this court, it does not follow that, if we disagree with his action in that regard, we have a right, from the mere fact that chronologically the question cames to us later, to overrule him. In the instant situation, reasonable men could differ as to whether an inference, as claimed by McDermott, should have been drawn by the trial judge. However, neither by reason or by rule 52(a)[2] have we any right to supply an inference when he refused to draw such an inference, unless his determination is without any substantial basis in the evidence, Gaytime Frock Co. v. Liberty Mut. Ins. Co., 7 Cir., 148 F.2d 694, 696, or is clearly erroneous. In certral Ry. Signal Co. v. Longden, 7 Cir., 194 F.2d 310, 317, we said:
 
 
 25
 '* * * Findings may not be set aside unless clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; West v. Schwarz, 7 Cir., 182 F.2d 721, 722; Moths v. United States, 7 Cir., 179 F.2d 824. This rule applies to all reasonable inferences of the trial judge, for it is for him to determine the propriety of the inferences and conclusions to be drawn. His is the primary function of finding the facts and choosing from amongst conflicting factual inferences those which he considers most reasonable. Even where there is no dispute about the facts, if different reasonable inferences may be fairly drawn from the evidence, we are forbidden to disturb the findings based on such inferences unless they are clearly erroneous. * * *' To the same effect is, Snorgrass v. Sears, Roebuck & Co., 7 Cir., 275 F.2d 691, 693.
 
 
 26
 For these reasons, we hold that the findings and conclusions of the district court must stand.
 
 
 27
 Accordingly, the order of the district court, from which these appeals were taken, is affirmed without modification.
 
 
 28
 Order affirmed.
 
 
 
 [1]
 Leavitt had told McDermott that he had seen Baumgarth receive money from the sale of wastepaper and pocket it with the statement, 'We don't report this.'
 
 
 [2]
 28 U.S.C.A., rule 52(a)