UNITED STATES of America and Ralph L. Guyette, Special Agent, Internal Revenue Service, Plaintiffs-Appellees,

v.

John B. HARRINGTON, Defendant-Appellant.

No. 269, Docket 31863.

United States Court of Appeals Second Circuit.

Argued Jan. 4, 1968.

Decided Jan. 17, 1968.

John M. Brant, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph M. Howard, Joseph F. Radigan, U. S. Atty., Thomas P. Whalen, Asst. U. S. Atty., on the brief), for plaintiffs-appellees.

William J. Knight, Burlington, Vt., for defendant-appellant.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge:

John B. Harrington, a lawyer in Burlington, Vermont, appeals from an order of Judge Leddy of the District Court for Vermont enforcing two summonses which the Internal Revenue Service caused to be served on the appellant on February 16, 1967. The summonses were issued under Section 7602[1] of the Internal Revenue Code and required Harrington to appear before a Special Agent of the I.R.S. on February 28, 1967, "to give testimony relating to the tax liability and/or the collection of the tax liability of [Merle W. Wood, as to one summons, and The Country Store, Inc. as to

---

1. I.R.C.1954, § 7602, 26 U.S.C. § 7602:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

the other] \* \* \* and to bring with you and produce for examination the following books, records, and papers \* \* " The summonses then recited a list of papers including journals, cards and other records pertaining to money received by Harrington from Merle W. Wood in connection with his divorce from Mary L. Wood, a client of the appellant's firm.[2] In particular, this appeal involves questions concerning the propriety of enforcing the clause of the summonses requiring Harrington to produce:

> Cash disbursement journals, ledger cards, and/or other such records in your possession, detailing dates, check numbers and amounts of money paid out by you or your office in connection with the Wood divorce and settlement actions.

The summonses concluded with the explanation that the documents demanded "bear upon the correctness of the tax liabilities, or lack thereof, of Merle W. Wood and/or The Country Store, Inc." Harrington appeared before the Special Agent, but refused to produce the records which indicate his disposition of funds received from the taxpayer under investigation, and accordingly this petition to enforce was filed under Section 7604,[3] with an affidavit stating that the I.R.S. was investigating the tax liability of Merle W. Wood and The Country Store, Inc. for the years 1961 through 1966, that the records were necessary to evaluation of that tax position, and that Harrington had refused to comply with the summonses.

At a brief hearing before the District Court the appellant indicated his position that the line should be drawn between records of his receipt of funds pursuant to the court decree of divorce and settlement, which he was willing to produce, and records tracing the course of those moneys after they came into his hands, which he was unwilling to produce. He did state that the funds received by his office were used solely for the benefit of Mary Wood and that none had been returned to her former husband.

▇ In response, the Government argued that it could not accept appellant's characterization of the payments without examination. Judge Leddy agreed, and ordered that the summonses be enforced, and that the records be turned over to the Revenue Service. Subsequently, Harrington brought this appeal, and the records including checks, ledger pages and cards and other material involving the Wood divorce, and the trust account into which settlement payments came, were delivered into the custody of the District Court. We have jurisdiction since the Supreme Court has held that

2. The description of the items to be produced was substantially the same in each summons:

Cash receipts journals, ledger cards, and/or other such records in your possession detailing dates and amounts of money paid to you or your office by Merle W. Wood, or by anyone in his behalf, in connection with his divorce action in the case of Mary L. Wood v. Merle W. Wood —such payments, covering, but not limited to, the following:

Lump-sum divorce settlements
Attorney's fees and/or expenses
Alimony payments

Duplicate bank deposit slips in your possession relating to any or all of the above payments which may have been received by you or your office in the form of checks or money orders.

Cash disbursement journals, ledger cards, and/or other such records in your possession, detailing dates, check numbers and amounts of money paid out by you or your office in connection with the Wood divorce and settlement actions.

Cancelled checks in your possession, utilized in the payment of the above disbursements by you or your office.

Mr. Harrington's documents bear upon the correctness of the tax liabilities, or lack thereof, of Merle W. Wood and/or The Country Store, Inc.

3. I.R.C.1954, § 7604, 26 U.S.C. § 7604:

(a) *Jurisdiction of District Court.*— If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

an order directing compliance with an administrative summons is appealable. Reisman v. Caplin, 375 U.S. 440, 84 S. Ct. 508, 11 L.Ed.2d 459 (1964).[4]

Some points are clear from these facts: there is no doubt that the onus on the appellant is slight—he has been able to segregate the requested records without difficulty and place them with the court; second, there is no merit in a contention here that the Government proposed a rambling exploration through the appellant's files. The dispute is more narrowly drawn, and it may be put this way: whether the Government indicated sufficient relevancy to the tax liability under investigation to warrant the order directing production of third-party records of disbursements of money received from the taxpayer on behalf of taxpayer's former wife pursuant to a state court decree of divorce and settlement. Since the District Court required no more of the Government to show relevance to the investigation than appeared from the face of the summonses, we must restrict our inquiry to the documents themselves. We have done so, and we conclude that the summonses were drawn with adequate precision, that it appears from their face that the records requested were sufficiently relevant to the investigation, and therefore we affirm the order enforcing their production.

■ Although the Fourth Amendment prohibition against unreasonable searches and seizures does not require of judicially enforceable summonses so stiff a standard as probable cause, United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); Civil Aeronautics Board v. Hermann, 353 U.S. 322,

77 S.Ct. 804, 1 L.Ed.2d 852 (1957); United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed.2d 401 (1950), the Government may not exercise its investigative and inquisitorial power without limit—the examination is "unreasonable" and impermissible if it is overbroad, "out of proportion to the end sought," McMann v. SEC, 87 F.2d 377, 109 A.L.R. 1445 (2d Cir.), cert. denied, McMann v. Engle, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342 (1937), or if it is "so unrelated to the matter properly under inquiry as to exceed the investigatory power." United States v. Morton Salt Co., 338 U.S. at 652, 70 S.Ct. at 369.

■ The importance of judicial scrutiny of such orders before any punitive action is taken was recognized by the Supreme Court in holding that a person directed to produce records before an Internal Revenue Agent be given the opportunity to test the summons in court before being subjected to contempt penalties for disobeying the order. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). This judicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation. And so this court has held that a District Court asked to enforce such a summons must determine not only whether this burden imposed is unreasonably onerous, but also whether the records sought were relevant to the investigation, not in the sense of an affirmative showing of probable cause, but "whether the inspection sought might have thrown light upon the correctness of the taxpayer's returns." Foster v.

---

4. This holding on appealability, while not necessary to disposition of *Reisman*, does settle a conflict among the various courts of appeals. This court has consistently held orders directing compliance with an investigative summons appealable. United States v. Kulukundis, 329 F.2d 197 (2d Cir. 1964); In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2d Cir. 1953). See also O'Connor v. O'Connell, 253 F.2d 365 (1st Cir. 1958); Falsone v.

United States, 205 F.2d 734 (5th Cir. 1953); Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963); D. I. Operating Co. v. United States, 321 F.2d 586 (9th Cir. 1963). Contra, In re Davis, 303 F.2d 601 (7th Cir.), cert. granted, Davis v. Soja, 371 U.S. 810, 83 S.Ct. 45, 9 L.Ed.2d 53 (1962), judgment vacated and dismissed for mootness, 374 U.S. 495, 83 S.Ct. 1863, 10 L.Ed.2d 1043 (1963).

United States, 265 F.2d 183 (2d Cir., 1959), cert. denied, 360 U.S. 912, 79 S. Ct. 1297, 3 L.Ed.2d 1261 (1960).

That this is the appropriate standard is clear from Justice Harlan's opinion for the Court in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) where it was held that the statutory prohibition against "unnecessary examination," I.R.C. § 7605(b), did not impose a requirement that the Government show probable cause to suspect fraud before it could reexamine the taxpayer's records. The Supreme Court granted certiorari "[b]ecause of the differing views in the circuits on the standards the Internal Revenue Service must meet to obtain judicial enforcement of its orders," 379 U.S. at 50–51, 85 S.Ct. at 251, and held that:

> * * * the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons * * *. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed * * *.

379 U.S. at 57–58, 85 S.Ct. at 255.[5]

▇ Thus appellant's suggestion that the question we must ask is whether the Government has shown through clear and unequivocal evidence that the records are relevant to the investigation cannot be accepted—such proof would in the ordinary case be impossible, and such a requirement would unduly interfere with the essential task of the I.R.S. to evaluate the tax liability of taxpayers. At the same time, the Government may not defend a failure to indicate sufficient relationship of records to the investigation solely on the basis that some chance of relevance exists or some possibility of relation remains, and no one can discern more until after examination. The personal interest cannot be so blithely brushed aside. The question, and it is not always one that lends itself easily to solution, is whether from what the Government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable — in short, whether the "might" in the articulated standard, "might throw light upon the correctness of the return," is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered.

▇ In this case, as in *Foster*, that test is not difficult to apply. In *Foster*

---

5. The Ninth Circuit did indicate that a clear showing of relevancy would be required in third-party tax investigation, Hubner v. Tucker, 245 F.2d 35 (1957), but that case involved an overbroad and sweeping order that failed to specify the particular records essential to the investigation. Thus, the protective measures imposed by the court might have been a response to an egregious order. In any event, this court has consistently refused to apply a probable cause standard to such a summons. See, e. g., Foster v. United States, 265 F.2d 183 (2d Cir. 1959), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1960); United States v. Siegel, 263 F.2d 530 (2d Cir. 1959). Judge Kaufman, then on the district court did use the words "probable cause" in a case involving a third-party summons, but it would appear from the context and the cases cited that by this was meant only that some connection be

shown between the taxpayer under investigation and the person against whom the order is issued from which it is reasonable to believe that the records might include information relevant to the investigation. Application of Levine, 149 F.Supp. 642 (S.D.N.Y.), aff'd 243 F.2d 175 (2d Cir. 1957). See also United States v. Ryan, 320 F.2d 500 (6th Cir. 1963), aff'd 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122 (1964). Compare O'Connor v. O'Connell, 253 F.2d 365 (1st Cir. 1958), followed in Lash v. Nighosian, 273 F.2d 185 (1st Cir. 1959); Globe Construction Co. v. Humphrey, 229 F.2d 148 5th Cir. 1956); DeMasters v. Arend, 313 F.2d 79 (9th Cir. 1963). This was the conflict which the Supreme Court resolved in Powell essentially by adopt'ng the standard applied by this court in Foster v. United States, supra, and by the Sixth Circuit in United States v. Ryan, supra.

the records of a taxpayer's bank were obviously pertinent to the question under investigation, whether the taxpayer had received salary or dividends from a foreign corporation, 265 F.2d 183, 187, an issue made crucial to the determination of tax liability by I.R.C.1954, § 911(a). Here, the connection between the records sought and the investigation of Merle Wood and The Country Store, Inc. is no less evident. Under I.R.C. § 71 and I.R.C. § 215 certain payments of alimony are taxable to the wife and deductible by the husband. The tax treatment of payments between former spouses depends not merely on the characterization offered by one or the other, but on the determination which is made by the I.R.S. from evaluation of all the circumstances, and subject to review and correction by the courts. For example, the I.R.S. has taken the position that the payment of the wife's legal fees is not deductible while medical expenses paid until death or remarriage may be deducted by the husband. Rev.Rul. 62–106, 1962–2 C.B. 21. Here, the disbursement records are relevant to determine first whether Mary Wood actually received the moneys taken in by appellant from the taxpayer, and second, whether any of these funds were diverted back to Merle Wood either directly or indirectly. Only if the records are examined will it be possible to evaluate the propriety of whatever treatment the taxpayer himself gave to those payments and other arrangements made with his former wife.

Although it might have been advisable for the District Court to require some further explanation of the Government, the face of the summonses raises these issues and indicates their relevancy to the investigation with sufficient clarity. From the summons we know that the records sought pertain to funds received from the taxpayer by the appellant on behalf of Mary Wood; we know, too, that Mary and Merle Wood were formerly married, that they were divorced by a court decree that provided for certain settlement payments and alimony. There

is no question concerning the pertinence of those payments to the tax liability of the taxpayers in the years under investigation; the records sought are described with care and precision in the summonses, and they have been segregated from other papers of appellant without difficulty.

In these circumstances, we cannot say that the order unreasonably invades the privacy of appellant. The investigative power is indispensable to administration of the tax law; the Constitution requires, as in so many cases of Government activity, that this power not be exercised in random disregard of personal interests, that the orders issued under the statute be pertinent and particularistic in the way we have set forth. To require more than that would confound the public interest in effective and even taxation. The summonses issued against John B. Harrington meet the appropriate test of reasonableness, and therefore we affirm the order of the District Court directing appellant to comply with the request for examination.