UNITED STATES of America and Tobe
H. Todd, Jr., Revenue Agent, Internal
Revenue Service, Appellee,

v.

Charles THEODORE, as Vice-President of
Theodore Accounting Service, P. A., and
Theodore Accounting Service, a Profes-
sional Association, Appellants.

No. 72–2390.

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1973.

Decided May 31 1973.

William B. Shearer, Jr., Greenville, S. C. (Robert A. Dobson, III, and Dobson & Dobson, Greenville, S. C., on brief) for appellants.

Charles E. Anderson, Atty., Tax Division, U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and John P. Burke, Attys., Tax Division, U. S. Dept. of Justice, John K. Grisso, U. S. Atty., and J. D. McCoy, III, Asst. U. S. Atty., on brief) for appellee.

Before SOBELOFF, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

This appeal results from a proceeding initiated by the Internal Revenue Service to enforce an administrative summons issued pursuant to 26 U.S.C. § 7602.[1] This section authorizes IRS to summon anyone in possession of pertinent records to appear and produce them, for the purpose of either ascertaining the correctness of any return or determining the correct tax liability of any person. Section 7604(b)[2] then authorizes District Courts to enforce 7602 summonses. In the instant case, the District Court ordered Charles Theodore, vice president of Theodore Accounting Service, P. A., and custodian of its records, to produce for examination and/or copying:

(1) All accounting records, workpapers, correspondence, memoranda and other documents in your possession or used by you in connection with the preparation of all Federal Income Tax returns for your customers and clients for the years 1969, 1970, and 1971.

(2) All retained copies of 1969, 1970 and 1971 Federal Income Tax returns, the originals of which were prepared by you for your customers and clients.

From this order, Appellants Theodore and Theodore Accounting Service now appeal.

I

In an effort to strike at one source of tax cheating, IRS initiated in 1972 a nationwide project to investigate individual professional tax preparers to determine

---

1. 26 U.S.C. § 7602 provides: Examination of books and witnesses.

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

2. (b) Enforcement.—Whenever any person summoned under section 6420(e)(2), 6421 (f)(2), 6424(d)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

whether they were filing accurate returns for their clients. To this end, special agents of the IRS's Intelligence Division, posing as ordinary customers, were sent to the offices of selected preparers. In this guise, the undercover agent would provide the preparer with all the information needed to complete a return. The preparer's work product would then be audited carefully to determine whether he had used accurately the information furnished him. If it appeared that the information had been used improperly but there was insufficient evidence of wrongdoing to warrant immediate criminal prosecution, the case would be transferred to IRS's Audit Division.

The Audit Division then promptly would issue a cease and desist order and ask the suspect preparer for copies of all other returns prepared by him. The alleged purpose of this request was to ascertain whether the suspect preparer had erred in computing the tax liabilities of his other clients as well. IRS would resort to a section 7602 summons to compel production only if a preparer refused voluntarily to make available for audit the requested information. If, during the course of IRS's auditing the returns of the preparer's other clients, errors in computing tax liabilities were uncovered, the affected taxpayers would be contacted to pay additional tax. And, if sufficient evidence were collected during the investigation to support criminal prosecution of the tax preparer involved, the matter would be referred back to the Intelligence Division for that purpose.

As part of this nationwide project, an IRS undercover agent visited the Theodore Accounting Service posing as a pro-

spective client seeking assistance in the preparation of his tax return. A subsequent audit of the return prepared by the Theodore firm for the agent revealed that an incorrect tax refund had been requested. Thereupon, IRS issued a cease and desist order and requested access to all of the Theodore firm's records relating to tax returns prepared from 1969 through 1971 so that the service might "correct all tax returns which have been incorrectly prepared." Charles Theodore refused to give IRS the requested information and a section 7602 administrative summons was issued. The District Court enforcement proceeding and this appeal then followed.

## II

The appellants initially raise several jurisdictional objections to the enforcement of the summons. We find none meritorious. It is first contended that since Charles Theodore rather than the corporation was named as party to the action, the District Court's enforcement order should be reversed and the summons quashed. This argument makes little sense. Charles Theodore is the proper party. Indeed, as the officer of the corporation who has custody and care of the records described, he is a member of the class specifically described in section 7602—"any person having possession, custody, or care of books of account." See United States v. Held, 435 F.2d 1361, 1364–1365 (6 Cir. 1970); also see Fed.R.Civ.P. 17(b).

Next, appellants argue that since Theodore Accounting Service, P. A., has never filed articles of association as is required by South Carolina law,[3]

3. Section 56–1604, Code of Laws of South Carolina (1971 Supp.), provides:

Articles of association; filing; recordation; amendment; dissolution; name of association.—Qualified persons may form a professional association by executing and recording articles of association in the office of the clerk of court in the county in which the association's principal office is located. The clerk shall record the articles of association

and any amendments thereto or instruments of dissolution thereof in a separate book to be kept for that purpose. The clerk of court shall receive as fees for recording any original articles of association or amendments thereto the sum of five dollars plus fifteen cents for each one hundred words contained in the particular document recorded. The articles of association shall not be required to be published or recorded elsewhere.

the partnership never became a valid corporation and the requested records are therefore the personal property of Charles Theodore, entitled to Fifth Amendment protection. We agree with the District Court, Theodore v. United States, 347 F.Supp. 1070, 1071–1072 (D. S.C.1972), that the evidence presented demonstrates convincingly that Theodore Accounting Service held itself out to the general public and to the governments of South Carolina and the United States as a professional association and is now to be estopped from denying the existence and viability of its corporate entity. We further agree with the District Court that South Carolina continues to recognize de facto corporations and corporations by estoppel, *see Theodore, supra*, at 1072, citing Bethea v. Allen, 177 S.C. 534, 181 S.E. 893 (1935), and Dargan v. Graves, 252 S.C. 641, 168 S.E.2d 306 (1969), and that the privilege of self-incrimination is a purely personal one which cannot be invoked by or on behalf of a corporation or professional association.[4] *See* Theodore v. United States, *supra*. *Cf.* United States v. Bell, 448 F.2d 40 (9 Cir. 1971) (sole owner of corporation cannot assert personal privilege against incrimination as valid ground for refusing to produce corporate records).

### III

■ The appellants also interpose what is commonly known as the criminal purpose objection. This court is urged to refuse enforcement of the section 7602 summons on the ground that while ostensibly issued in furtherance of the civil investigation of those for whom Theodore Accounting Service had prepared returns, in actuality the summons was issued to pursue a criminal investigation of Charles Theodore personally. The Supreme Court settled this issue in Donaldson v. United States, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971), where it said:

> We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

Only where the sole objective of the investigation is to obtain evidence for use in a criminal prosecution will the purpose of the summons be said to violate the Fourth Amendment and enforcement be denied. The fact that the summons in reality may have a dual purpose or that the civil investigation may produce evidence that subsequently may be used in a criminal prosecution is no basis for objection. *See* Donaldson v. United States, *supra*; United States v. Held, 435 F.2d 1361 (6 Cir. 1970); United States v. Ruggeiro, 425 F.2d 1069 (9 Cir. 1970), cert. denied sub nom. Kyriaco v. United States, 401 U.S. 922, 91 S. Ct. 868, 27 L.Ed.2d 826 (1971); United States v. Salter, 432 F.2d 697 (1 Cir. 1970). There is ample evidence to support the District Court's finding that the Internal Revenue Service has not as yet recommended that Charles Theodore be prosecuted and that the Service has a genuine interest in auditing the returns of Theodore's clients to collect any defi-

The record of the articles of association, when so recorded, shall be notice of the provisions of the articles to the world as well as to all parties dealing with the association. The persons forming the professional association shall adopt a suitable name for the association. *Provided,* that the name selected shall be followed by the words 'Professional Association' or the abbreviation 'P.A.' The articles of association may contain any provision not in violation of law or the public policy of this State as the members of the association may decide. The articles may be amended or dissolved at any time by agreement of two thirds of the members at any regular meeting or at a special meeting called for that purpose. The amendment or instrument of dissolution shall be recorded in the same place as the original articles of association.

4. It is well settled that the corporation, itself, has no privilege against self-incrimination. *See* Essgee of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917 (1923); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

ciencies owed the Government. That a collateral result of this endeavor may be the eventual prosecution of Charles Theodore and that the Government has refused to promise him immunity from prosecution is of no consequence and in no way indicates any lack of good faith on the part of IRS. Nor does it make any difference that Theodore is not a taxpayer whose civil liability is being investigated but rather a third party in possession of pertinent records. *See* Hinchcliff v. Clarke, 371 F.2d 697 (6 Cir. 1967).

## IV

While we agree with IRS that appellants' jurisdictional arguments and criminal purpose objection are without substance, we nevertheless reverse the District Court's enforcement of the section 7602 summons for reasons set forth below.

Theodore raises a serious objection to the compass of the summons in suit. Indeed the particular summons issued in this case is unprecedented in its breadth. IRS is asking for copies of all the returns of all Theodore's clients for the years 1969, 1970 and 1971, and all records, memos, workpapers, etc., pertaining to the returns. We are told that this involves some 1500 returns and accompanying documentation.

Courts have in the past sanctioned the use of John Doe summonses, but all such cases involved either a single unidentified taxpayer or a small group of unknown taxpayers. *See, e. g.,* Tillotson v. Boughner, 333 F.2d 515, cert. denied, 379 U.S. 913, 85 S.Ct. 260, 13 L.Ed.2d 184 (7 Cir. 1964). IRS maintains that "The fact that in these cases only one or a few taxpayers were involved has no effect on the precedential value of these cases to the instant one." We cannot agree.

■■ The Fourth Amendment prohibition against unreasonable searches and seizures does not require that administrative summonses meet a "probable cause" standard in order to be en-forceable. United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Nonetheless, the Internal Revenue Service is not to be given unrestricted license to rummage through the office files of an accountant in the hope of perchance discovering information that would result in increased tax liabilities for some as yet unidentified client. Section 7602 summonses were not meant to give the IRS such investigative and inquisitorial power.

■■ A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought. United States v. Harrington, 388 F.2d 520, 523 (2 Cir. 1968). The Government cannot go on a "fishing expedition" through appellants' records, United States v. Dauphin Trust Co., 385 F.2d 129 (3 Cir. 1967); *contra* United States v. Giordano, 419 F.2d 564 (8 Cir. 1969), and where it appears that the purpose of the summons is "a rambling exploration" of a third party's files, it will not be enforced. *See* United States v. Harrington, *supra.* Indeed, we agree with Judge Lumbard that "[t]his judicial protection against the sweeping or irrelevant order is *particularly* appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation." United States v. Harrington, *supra.* (Emphasis added.)

■ Section 7602 summonses are not meant to serve as a tool to police the accounting profession. Nor are they to be used to obtain from large accounting firms the complete records of all clients so that the IRS might determine if there is an error in the return of some unknown taxpayer. Section 7602 provides that "[f]or the purpose of ascertaining the correctness of *any return* * * * determining the liability of *any person* * * * the Secretary or his delegate is authorized (1) to examine any books, papers, records or other data which may be relevant or material to such inquiry." (Emphasis added.)

We hold that this language only allows IRS to summon information relating to the correctness of a particular return or to a particular person and does not authorize the use of open-ended Joe Doe summonses. Therefore, we find the summons directing Charles Theodore to produce all of the returns and all of the work records relating to all of his clients for the years 1969–1971 is too broad and too vague to be enforced. We reverse the District Court's order enforcing the summons.

## V

■ There exists yet another ground for refusing to enforce that portion of the section 7602 summons that orders production of the federal income tax returns of all Theodore clients for the years 1969, 1970 and 1971 retained by the accounting firm. When the Supreme Court held in United States v. Powell, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), that the Commissioner did not have to meet a probable cause standard to obtain enforcement of section 7602 summonses in District Courts, it established three other prerequisites to enforcement. The Commissioner was to be required to show that his investigation was being conducted for a legitimate purpose, that the particular information being sought was relevant to that purpose, and that the information was not already within the Commissioner's possession. The appellants contend that the Commissioner already has in his possession copies of all the requested returns and that it would therefore be an abuse of process to order Theodore to turn over copies of these returns to the IRS.

The District Court rejected appellants' argument, adopting a very narrow definition of possession. The District Court, while finding that returns were on file in the regional filing center, reasoned that it would constitute an enormous and unjustifiably expensive under-taking for the Commissioner to search all of the returns in the center to find those prepared by Theodore. There is nothing in the record to support the conclusion that when IRS knows the name and social security number of a taxpayer, the Service cannot readily obtain his return. The obligation is upon the Commissioner to demonstrate that the material requested is not within his possession or, that if it is technically within his possession, he has no practical way of obtaining the desired item.

## VI

IRS also seeks a list of the names, addresses and social security numbers of all of Theodore's clients. Pursuant to an order of the District Court, Theodore deposited, in camera, a sealed list of all taxpayers for whom his accounting service prepared returns during the years in question.

■ We agree with the District Court that the Commissioner has been granted by Congress ample power to inquire and obtain the names of these taxpayers by the use of the section 7602 summons if the information is not otherwise accessible to him. In oral argument we were told that the returns for tax year 1972 were the first which required a preparer's identification number. We do not know whether this means that there is no way short of a manual search to obtain the requested taxpayer lists for the years 1969, 1970 and 1971. Therefore, we remand to the District Court to determine whether or not IRS has any reasonable or practical means at its disposal to compile the desired lists. Should it be determined that the list of Theodore clients for the desired years is not accessible to the IRS, the section 7602 summons should be enforced to the extent of turning over to IRS the list of Theodore clients now on deposit with the District Court.

Reversed and remanded with instructions.