**In the Matter of an Application to Enforce Administrative Subpoenae Duces Tecum of the SECURITIES AND EXCHANGE COMMISSION, Applicant,**

v.

**TOUCHE ROSS & CO., Misag Tabibian, Respondents.**

No. M–18–304.

United States District Court, S. D. New York.

Sept. 23, 1977.

Donald N. Malawsky, Jeffrey H. Tucker, Douglas P. Jacobs, and Ralph Pernick, Andrew E. Goldstein and Paul Lubetkin, New York City, for S.E.C.

Richard H. Murray, New York City, Jonathan D. Kantrowitz, Bridgeport, Conn., and Ronald P. Brotherton, Avon, Conn., Richard L. Spinogatti, of Shea, Gould, Climenko & Casey, New York City, and Milton V. Freeman and Stephen M. Sacks, of Arnold & Porter, Washington, D. C., for Touche Ross and Mr. Tabibian.

## MEMORANDUM DECISION

BRIEANT, District Judge.

Before the Court for decision are motions by the Securities and Exchange Commission ("SEC") to enforce *subpoenae duces tecum* issued to respondents Touche Ross & Co. and Misag Tabibian, and motions by respondents to vacate same.

The facts are not in dispute. As a result of proceedings had with respect to the motions, the SEC has now modified its position and the nature of its request. See Transcript of proceedings of July 22, 1977, at p. 8.

Touche Ross & Co. is one of the nation's leading accounting partnerships, providing auditing and related services to clients throughout the world. At all relevant times it was the independent auditor for the National Bank of North America ("NBNA"). It had no professional relationship with Bohack Corporation ("Bohack"), a publicly held corporation, operating a chain of grocery supermarkets.

In 1972 NBNA loaned in excess of $3 Million Dollars to Bohack. In connection with this loan, and its renewals or extensions, and in waiving rights under the loan agreement, NBNA relied, at least in part, on financial statements of Bohack certified by the accounting firm of Peat, Marwick, Mitchell & Co. ("Peat Marwick"). Neither Touche Ross nor Tabibian ever performed any accounting services for Bohack.

On July 30, 1974, in the United States District Court for the Eastern District of New York, Bohack filed a Petition for Reorganization pursuant to Chapter XI of the Bankruptcy Act. Those proceedings have not yet been completed, although a Plan of Reorganization has been filed, found acceptable by a majority of creditors and awaits a confirmation hearing. It appears, however, that NBNA will be unable to collect substantial amounts due under its loan, and members of the general public who invested in securities of Bohack will suffer financial loss.

This latter fact is properly of interest to the SEC, which on March 23, 1976 issued an order directing a private investigation, pursuant to §§ 21(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(a) and (b). By reason of that Order, as subsequently amplified, specified members of the SEC's staff are now conducting a private investigation to determine whether there were any violations of the federal securities

laws by Bohack, or others, leading up to its collapse. As part of this effort, the SEC staff is investigating possible material misstatements or omissions in Bohack's financial statements and other filings for the period beginning January 1, 1973.

It would seem clear that the investigation is entirely within the power and jurisdiction of the SEC, also that the public interest will be served by a full and vigorous exploration of all relevant evidence, and information which could lead to relevant evidence.

When NBNA perceived that it was faced with a serious loss with respect to its Bohack loan, it began to explore, directly and through counsel, whether or not it had any basis for prosecuting a civil action or claim against third parties, specifically, Bohack's accountants, Peat Marwick.

In a commendable effort to avoid the expense and delay associated with recourse to the Courts, NBNA and Peat Marwick entered into an agreement on November 5, 1976, seeking to resolve, without litigation, whether there was in fact any evidentiary basis for NBNA to prosecute a claim against Peat Marwick for professional malpractice, negligence or otherwise. Under this agreement, Peat Marwick was to make available to Touche Ross, acting for NBNA, all of its work papers and files in connection with its examination of Bohack's financials. Touche Ross was to review these papers, investigate, consider and then express to NBNA its conclusion as to whether there were material deficiencies in the professional services rendered by Peat Marwick. The parties agreed that if Touche Ross found no material deficiencies, NBNA would release Peat Marwick from all claims it might have in connection with its loss on the Bohack loan, and were the conclusion otherwise, Peat Marwick would be afforded an opportunity to present its side of the situation to NBNA and its attorneys before NBNA would sue Peat Marwick.

The parties proceeded accordingly, and respondent Tabibian did conduct a review of Peat Marwick's audit procedures with respect to Bohack. This was done by an office examination of the Peat Marwick work papers, already available directly to the SEC in connection with its investigation, and by interviewing persons at Peat Marwick who were familiar with the matter. Those persons are also amenable to subpoena in connection with the SEC's investigation. While these motions were pending, the SEC has taken the testimony of most of such Peat Marwick's employees.

NBNA is not formally before the Court in these proceedings, although letters have been exchanged and submitted in its behalf, and its counsel has been heard informally. At the initial hearing before me, NBNA, through counsel, advised the Court that it had no interest in the issue and was not asserting any proprietary interest of its own in confidentiality or litigation work product. Cf. Hickman v. Taylor, 329 U.S. 495, 508, 510, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Whatever the situation might be if NBNA were trying to protect the litigation work product of accountants retained by its lawyers to investigate the facts bearing on the scope and validity of a proposed or pending lawsuit that issue is not present before us here. The original agreement and letter of engagement of Touche Ross by NBNA specifies that the matter be kept strictly confidential. Regardless of the possible interest which NBNA might have had in keeping the fruits of its investigation private, Touche Ross has no such interest, nor can it assert the interests of others. There is no pending litigation between NBNA and Peat Marwick.

Also no longer present is the issue as to whether Touche Ross and Tabibian may be asked about their professional opinions of the work done by Peat Marwick.

The SEC has now disclaimed any intention to compel respondents to give "expert" testimony. Indeed, the SEC has already obtained a copy of the Touche Ross report.

■ The Court finds that the testimony of Tabibian, and any other employee of Touche Ross having knowledge of the matter is necessary, insofar as it extends to interviews or conversations with persons as-

sociated with Peat Marwick, or others. Such statements or conversations were not privileged on the part of those who made them. The SEC has represented to the Court, and it is accepted as true for purpose of this hearing, that the oral testimony of Peat Marwick officers or employees previously taken, included facts with respect to which recollection or memory is diminished, or so testified to be, and testimony which may conflict with other information known to the SEC. The SEC is entitled to every man's evidence, and there is no reason why Touche Ross or Tabibian cannot be examined as to the content of any statements made by persons acting for Peat Marwick or others during the course of Touche Ross' review.

The documents generated by Touche Ross are necessary for the purpose of refreshing the recollection of Tabibian, or others who may be required to give oral testimony as to their conversations with Peat Marwick personnel. It is also proper for the SEC's staff to examine all papers generated by Touche Ross in connection with its retainer, above described, for the purpose of comparing the data therein contained with the data contained in Peat Marwick's work papers. To the extent Touche Ross papers contain material not found in Peat Marwick papers, it may be inferred that Touche Ross made the entries as a result of conversations with Peat Marwick personnel, and it would be proper to use these documents and others listed in the "Attachment" to the subpoenae, in eliciting testimony from Touche Ross, showing when, where and in whose presence such information was derived, and in refreshing the recollection of Touche Ross witnesses.

Recognizing the intensity and sincerity with which respondents have resisted these subpoenae in this Court and by direct representations made to the SEC staff, we refer briefly to points raised in opposition.

■■ Respondents argue in effect that all that is sought here is "an appealing opportunity to support [the SEC's] auditing efforts with those of an independent accountant," quoting from *United States v.*

*Coopers & Lybrand,* 413 F.Supp. 942, 947 (D.Col.1975), *aff'd* 550 F.2d 615 (10th Cir. 1977). Such a purpose would not constitute a sufficient showing of relevance to justify the subpoenae. However, here it has been represented to the Court, and not denied, that Touche Ross' activities were not limited to a mere review of work papers; its personnel talked with and interviewed personnel of Peat Marwick. These Peat Marwick persons are available for testimony, and the information disclosed to them by Touche Ross is relevant as admissions against interest, and for purposes of refreshing recollection, said to have become dim with the passing of time. It is also relevant on the issue of credibility. The Court does not regard this situation as presenting a case where Touche Ross' work papers are merely being sought to save time and effort on the part of the Commission's own accountants. See *United States v. Davey,* 543 F.2d 996, 1000 (2d Cir. 1976).

■ It has also been suggested that the materials sought to be elicited are privileged as to Peat Marwick, as "evidence of conduct or statements made in compromise negotiations," rendered inadmissible under Rule 408, F.R.Evid. Without reaching the question of whether these rules of evidence are applicable to proceedings before the SEC [but, see Rules 101 and 1101, F.R. Evid.], it is clear to the Court from the documents themselves, that the scope and nature of the retainer of Touche Ross by NBNA was not to engage in compromise negotiations. The function of Touche Ross was more akin to that of an arbitrator, an expert appraiser, a marine surveyor, or an investigator charged with ascertaining facts, for the purpose of expressing a conclusion as to whether or not conduct which had already taken place was actionable at law. Indeed, this is all that Touche Ross did do under the retainer, and there is no evidence that it made any attempt to compromise or settle any unexpressed claims which NBNA was considering or planning to assert against Peat Marwick.

It is also asserted that the use of an independent expert in an effort to avoid

litigation, as was done here, is a socially desirable practice. With this the Court agrees wholeheartedly. The ability of third parties to obtain the results of peer review, to determine whether actionable claims exist against accountants for malpractice or fraud is desirable; it would save the cost of much unnecessary litigation. We know that many such cases, lacking merit, are pursued in this Court and elsewhere. Some are strike suits, and some are brought in ignorance, based only on the fact of loss or damage.

In such litigation, often only after wasteful and expensive pretrial discovery, including production of documents in large numbers, wholesale interrogatories (proposed directly from inapposite forms used in prior litigation and previously committed to magnetic tape typewriters), and after taking depositions of all possible witnesses, it becomes certain that the claims lack merit. By this time, parties and counsel may be blinded by their own enthusiasm or competitiveness, and the controversy may take on a life of its own. It is almost impossible to dispose of complex accounting lawsuits by motion, and the result is that often; (a) it is too expensive to prosecute deserving claims with small amounts of damage; (b) it is possible to coerce payment of substantial sums in settlement for spurious, unfounded or unprovable claims; (c) all of the economic cost of these evils is passed on to the consumer; and (d) attention to such unresolved disputes prevents the allocation of legal, accounting and judicial efforts to more productive purposes. The procedure used in this case presents a practical, speedy and economical alternative.

However, admitting the truth of all of this, a value judgment must be made as to whether creating a new privilege of confidentiality for the activities such as were conducted by respondents in this case would serve the public better than adherence to our basic premise that courts and administrative agencies such as the SEC are entitled to every man's evidence.

Such a judgment ought to be made by the Commission in the first instance, charged as it is with a special expertise and rule-making power in administering the federal laws regulating securities. It is not clear from this case whether the public policy arguments urged by respondents have been rejected merely on the staff level, or whether the Commission itself has concluded that these conflicting policies ought to be resolved in favor of obtaining evidence, and against the suppression of evidence by invocation of a new and additional privilege.

Were this Court to be called upon to resolve this great policy issue, and we do not think we are in the absence of a motion brought by NBNA to vacate the subpoenae, we would probably defer making such a policy judgment until the Commission itself could have expressed its official views clearly, perhaps by a rule of general applicability. Those favoring a privilege of confidentiality in favor of disputants who seek peer review of accountants' work papers, rather than sue, should take it up directly with the Commission, or address themselves to Congress. This Court, for the reasons stated, regards this issue as presenting a question for another day.

The other points raised in oral argument, briefs and the exchange of correspondents have been considered by the Court and are not deemed to alter the conclusions expressed above.

The application of the SEC is granted, and the cross-motion of respondents to quash *subpoenae duces tecum* is denied. The testimony taken pursuant to the subpoenae shall be limited as hereinbefore set forth.

Settle an order on five (5) days notice, containing appropriate provisions consistent with the foregoing. Such order may provide, if requested by any party, that the information and documents elicited pursuant to the subpoenae shall be retained as confidential, and shall not become a public record unless and until the further order of the Court made on notice to all parties. Any such protective provision, if granted, would be vacated in the event that a criminal indictment or formal proceedings of a

disciplinary or injunctive nature or other similar public proceedings should eventuate as a result of the Bohack investigation, or should the ends of justice so require.

Such order may also provide that the enforcement of the subpoenae shall be stayed for a period of twenty (20) days from the date thereof to permit application to the Court of Appeals for appellate review of this determination, and for a stay pending such appeal. This Court declines to grant a further stay pending appeal. See Rule 8, F.R.App.P.

This Court's Memorandum decision dated September 23, 1977 herein is recalled and vacated, and the foregoing is substituted therefor.